# EXHIBIT A

Filed
D.C. Superior Court
01/09/2020 16:25PM
Clerk of the Court

### SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| ERICA N. HAWTHORNE<br>1629 R Street SE<br>Washington, DC 20020<br><br>                    Plaintiff<br><br>v.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES,<br>LLC<br>15480 Laguna Canyon Road, Suite 100<br>Irvine, CA 92618<br>     <u>Registered Agent</u>: Corporation Service Co.<br>                          1090 Vermont Avenue NW<br>                          Washington, DC 20005<br><br><br>                    Defendant | Civil Action No.<br>(JURY TRIAL DEMANDED)<br><br><br>Calendar #<br>Judge<br><br>Next Event: |

### COMPLAINT FOR BREACH OF CONTRACT, FRAUD, MISREPRESENTATION AND OTHER CAUSES OF ACTION AND JURY DEMAND

Plaintiff, Erica Hawthorne, by and through undersigned counsel, files this Complaint against Rushmore Loan Management Services, LLC, Defendant, for Breach of Contract, Fraud, Misrepresentation and Other Claims and respectfully avers:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the persons, property and subject matter of this action based on D.C. Code § 11-921 and § 13-422.

### PARTIES

2. Plaintiff Erica Hawthorne ("Ms. Hawthorne") is the record owner and borrower for the subject property located at 1629 R Street SE, Washington, DC 20020 ("property"). Her place of residence is located at 56 Ferguson Street, Newark, NJ

1

07105.

3.  Defendant Rushmore Loan Management Services, LLC ("Defendant Rushmore")
    is a limited liability company organized and existing under the laws of the State of
    Delaware.  Defendant Rushmore is the mortgage servicer for the loan that is
    secured by Ms. Hawthorne's residence. Defendant Rushmore is a debt collector
    pursuant to 15 U.S.C.§ 1692(a).

### FACTS COMMON TO ALL CLAIMS

4.  Ms. Hawthorne obtained the mortgage loan at issue ("loan") on November 30,
    2007 from Real Estate Mortgage Network, Inc.  *See* Document Number
    2008028007.

5.  At all times, Ms. Hawthorne has been financially responsible to the extent that her
    finances permitted.   In 2015, Ms. Hawthorne fell behind on her mortgage due to
    out-of-pocket medical expenses and student loan transitioning out of forbearance.

6.  In 2016, mortgage servicing for the loan was transferred to Defendant Rushmore.

7.  In or about October 2016, Ms. Hawthorne began the loss mitigation application
    process with Defendant Rushmore. Her assigned point of contact was Shari Jabri-
    Gingras.

8.  At all times relevant, Ms. Jabri-Gingras was an employee of Defendant
    Rushmore.  All references to Ms. Jabri-Gingras are also references to Defendant
    Rushmore.

9.  At all times relevant, Defendant Rushmore acted as a debt collector pursuant to 15
    U.S.C.§ 1692(a).

10. On December 1, 2016, via email, Defendant Rushmore notified Ms. Hawthorne that she was approved for a work out option and that the offer letter would be sent out that week.

11. On January 26, 2017, via email, Defendant Rushmore informed Ms. Hawthorne that the work out approval (modification) documents were sent out. Her trial modification payments were March 2017 through August 2017. Ms. Hawthorne accepted the trial modification and returned the signed offer letter to Rushmore the next day.

12. Despite being on an active trial modification, Defendant Rushmore's foreclosure counsel, Stern & Eisenberg Mid Atlantic PC, sent Ms. Hawthorne a notice of intent to foreclose dated March 9, 2017.

13. When Ms. Hawthorne contacted Defendant Rushmore to express her concern, she informed Defendant Rushmore that the situation was "creating a significant amount of stress" and that she felt like she "was going to have a heart attack."

14. On March 23, 2017, Ms. Hawthorne contacted Stern & Eisenberg Mid Atlantic PC a regarding the notice of intent to foreclose and to notify them that she was on an active trial modification. Linda Barran, Esq. responded and stated that Rushmore was delayed in communicating that information to them and that she would ask the court to continue the case since she was in good standing with the modification. Ms. Barran confirmed that she would not ask the court to foreclose and that once a permanent modification was received, the case would be dismissed.

15. On May 16, 2017, contacted Defendant Rushmore to inquire about the negative credit reporting. Defendant Rushmore.

16. Only July 17, 2017, Defendant Rushmore informed Ms. Hawthorne that she would submit for the final modification (which takes about 3-4 weeks). She advised that once they were returned, it would take them another four (4) weeks for the system changes and that after the system changes were complete that Ms. Hawthorne could start making payments online.

17. On September 17, 2017, Ms. Hawthorne notified Defendant Rushmore that she received an email from TransUnion indicating that the tradeline for her loan was reported as having been foreclosed and that her payment due for September 2017 was $20,000.00.

18. On September 19, 2017, Ms. Hawthorne contacted Defendant Rushmore and informed that she recently received correspondence from Defendant Rushmore (signed with Ms. Jabri-Gingras's name) stating that she was in default and should pursue a modification, short-sale, etc. She again stated that was confused and caught off guard.

19. On September 21, 2017, Ms. Hawthorne contacted Ms. Jabri-Gingras and informed her that she received a FedEx package that said she qualified for a loan modification.

20. On October 2, 2017, Ms. Jabri-Gingras notified Ms. Hawthorne that she was being assigned a new point of contact and that that representative, Fred Taggert, would be contacting her.

4

21. At all times relevant, Mr. Taggert was an employee of Defendant Rushmore. All references to Mr. Taggert are also references to Defendant Rushmore.

22. On October 5, 2017, via email, Ms. Hawthorne requested that Ms. Jabri-Gingras provide her with Mr. Taggert's direct number or provide Mr. Taggert with her number as she had not yet received a call back. She stated that she had to return the final modification documents to Defendant Rushmore by the October 18, 2017 and had some questions.

23. Between October 11, 2017 and October 23, 2017, Ms. Hawthorne made repeated attempted to contact Mr. Taggert by phone and email to no avail. She informed Defendant Rushmore that she was incredibly frustrated by the fact that it had been a month and she was not able to get any answers to her questions about the modification. She stated that she was told that she was supposed to receive paperwork two (2) weeks ago but had not received anything.

24. Specifically, Ms. Hawthorne informed Defendant Rushmore that no one seemed to know what her modified monthly payment would be and that she wanted to get a specific number so that the modification could be finalized.

25. She informed Defendant Rushmore about the differences in payment amounts she received in different pieces of correspondence from Rushmore. She informed Defendant Rushmore about the "foreclosed" credit reporting by Rushmore.

26. She informed Defendant Rushmore that it continued to advise her to ignore the foreclosure reporting and court notices.

27. On October 23, 2017, Mr. Taggert contacted Ms. Hawthorne and stated that Defendant Rushmore was in the process of re-drafting the final modification

document to reflect the 60-day spread but that the processors could not give him a time table for completion.  He stated that she could continue to make the trial payment of $2,290.00 until it was resolved and the final mod payment obtained.

28. On October 31, 2017, Defendant Rushmore forwarded the final modification agreement to Ms. Hawthorne with the following terms (effective September 1, 2017):                                    See **Exhibit 1**.

| | |
|---|---|
| New principal balance | $299,060.28 |
| Deferred principal balance | $9,260.28 |
| Interest bearing principal balance | $289,800.00 |
| Fixed interest rate | 5.125% |
| Monthly principal and interest payment | $1,421.48 |
| Maturity date | August 1, 2057 |
| Escrow shortage | $1,891.70 |

29. She notes that although her property taxes and hazard insurance premiums were not originally escrowed into the loan payment, a mandatory escrow account was created as part of the modification[1] which enabled Defendant Rushmore to analyze and disburse funds for property taxes and hazard insurance premiums.

30. Ms. Hawthorne contacted Mr. Taggert and stated that the documents showed a higher payment amount and that the modification was effective September 1st. She asked if she was required to send the payment difference for September and October.

31. On November 15, 2017, Ms. Hawthorne contacted Mr. Taggert again requested confirmation regarding whether she needed to pay the difference in the monthly payment for September and October

---

[1] There is no language in the final modification agreement attached as Exhibit 4 advising Ms. Hawthorne that she was required to have her property taxes and hazard insurance premiums escrowed as a term of the modification.

6

32. On November 30, 2017, Ms. Hawthorne executed the final modification agreement and returned to Defendant Rushmore.  She again contacted Mr. Taggert and asked him to confirm regarding whether she needed to pay the difference in the monthly payment for September and October.

33. On December 6, 2017, Mr. Taggert contacted Ms. Hawthorne and stated that he calculated the difference in the September, October and November payments as being $326.52.

34. On December 21, 2017, Defendant Rushmore forwarded to Ms. Hawthorne a copy of the final modification agreement reflecting signatures from both her and Defendant Rushmore.  See **Exhibit 1**.

35. On January 8, 2018 and January 30, 2018, Ms. Hawthorne informed Mr. Taggert that her credit report was still showing that she was late on payments. She asked that it be corrected or that she be directed to the person that handles the corrections.

36. On February 2, 2018, Mr. Taggert contacted Ms. Hawthorne and informed her that she needed to make the request for credit correction in writing as his request had been rejected. He provided the contact information for the appropriate Rushmore department.

37. On February 9, 2018, Ms. Hawthorne contacted Mr. Taggert and informed him that she just spoke with a representative that stated that she was four (4) months in arrears.

38. On February 20, 2018, Ms. Hawthorne contacted Mr. Taggert again and asked if she could get a response. She stated that she had also left him a message. She

stated that she was afraid to send money because he had no idea where the money went.

39. On March 13, 2018, Ms. Hawthorne again contacted Mr. Taggert about why she had not yet received a response or a resolution to her online payment authorization or negative reporting.

40. On September 14, 2018, Ms. Hawthorne contacted Mr. Taggert and provided him with the notice of missed payment she received from TransUnion. She stated that Defendant Rushmore had $50,000.00 and her loan balance was still showing as $303,000.00 which didn't match what Rushmore's interface said.

41. Since her loan was modified in October 2017, Rushmore has continued to change the amount that Ms. Hawthorne is required to pay on a monthly basis.  To date, she has overpaid her monthly mortgage payment amount but has not received a credit or payment adjustment.

42. In July 2018, Defendant Rushmore informed Ms. Hawthorne that she was overpaying and that she only owed $340 for her August 2018 payment. To date, she has overpaid her monthly mortgage payment amount but has not received a credit or payment adjustment.

43. As of July 2018, Defendant Rushmore continued to contact Ms. Hawthorne to inform her that she was in default. The same was reported on her credit report.

44. For reasons unbeknownst to Ms. Hawthorne, Defendant Rushmore failed to apply mortgage payments made March 2017 through January 2019 until February 2019.

45. Ms. Hawthorne contacted the credit reporting agencies to dispute the negative reporting by Defendant Rushmore but Defendant Rushmore confirmed that the

reporting was accurate.   The credit reporting agencies subsequently closed the disputes.

46. On or about 2018, Ms. Hawthorne learned that Defendant Rushmore added a force-placed insurance policy to her account – despite having an active private policy – without providing her the required notice pursuant to 12 C.F.R. § 1024.37.  Despite the insurance issue having been corrected, Defendant Rushmore has again added a force-placed policy to her account.

47. In 2019, Ms. Hawthorne noticed that a company was performing landscaping services for her property that she did not request as she already employed a company to maintain her lawn. Her mortgage statement reflects that Defendant Rushmore is unnecessarily charging fees for services.  See **Exhibit 2**.

48. On October 24, 2019, Defendant Rushmore forwarded to Ms. Hawthorne a letter informing her of Defendant Rushmore's "business decision to retract [her] escrow analysis review completed on October 17, 2019…" and to "return [her] loan back to its original state prior to the analysis…"  Her account was to be re-analyzed "on a date later to be determined" and that notification of her new payment would be sent after it was determined. The attached escrow analysis disclosure statement notes a surplus of $10,388.73.  See **Exhibit 3**.

49. Due to the atrocious handling and servicing of her loan by Defendant Rushmore, Ms. Hawthorne's credit report and credit score have been compromised.

50. Due to the false negative reporting, she was denied for a $10,000.00 loan. She was unable to secure transportation after being denied for car leases (valued at $300.00 per month).

51. Due to the false negative reporting, she was unable to rent her property and therefore lost $24,000.00 in annual rental income due to being denied financing for the needed repairs.

52. At all times relevant, Ms. Hawthorne has suffered from Crohn's Disease. Due to the stress of her interaction and treatment by Defendant Rushmore, her condition was exacerbated and she was placed on additional medications (and procedures) to control the severity of her symptoms that were caused by stress.  She was forced to discontinue her invitro fertilization treatments which caused additional stress by Defendant Rushmore's mismanagement of her loan and damage to her credit report.   She continues to experience panic attacks, headaches and weight loss all due to stress.

53. Defendant Rushmore's misconduct is a pattern of practice that it continues to engage in to date.

## COUNT I
## (BREACH OF CONTRACT)

54. Ms. Hawthorne realleges, reaffirms and incorporates by reference the facts in paragraphs above as fully set forth herein.

55. Defendant Rushmore had a duty to service the loan in a manner that was in compliance with the Note and Deed of Trust and modification.

56. Defendant breached that duty when it failed to properly calculate Ms. Hawthorne's final monthly payment when it issued the final modification agreement in October 2017.

57. Defendant breached that duty when it continued to change the monthly payments after the final modification agreement was executed in November 2017.

58. Defendant breached that duty when it added an escrow account without a written agreement or notice to Ms. Hawthorne.

59. Defendant's breach was a proximate case of Ms. Hawthorne's injury.

60. Ms. Hawthorne was damaged when she was forced to pay incorrect monthly payment amounts, penalty fees and reported as late to the credit reporting agencies.

WHEREFORE, Ms. Hawthorne respectfully prays:

A. That this Court award damages in the amount of all overpayments made to Defendant Rushmore;

B. That this Court, in the alternative, award that any monies in appropriately assessed to Ms. Hawthorne's account be reversed and/or credited;

C. That this Court order that Defendant Rushmore submit a report to the applicable credit reporting agencies retrospectively correcting the erroneous late payments and other inaccuracies on her credit report related to the trade line for the mortgage loan at issue;

D. For reasonable attorney's fees and costs; and

E. For such other and further relief as the Court may deem just and appropriate.

**COUNT II**
**(NEGLIGENCE)**

61. Ms. Hawthorne realleges, reaffirms and incorporates by reference the facts in paragraphs above as fully set forth herein.

62. Defendant Rushmore had a duty to service the loan in a manner that was in compliance with the loan documents, final modification agreement and applicable

state and federal statutes.

63. Defendant breached its duty when it failed to properly calculate Ms. Hawthorne's final monthly payment for the final modification.

64. Defendant breached its duty when it continued to change the final monthly payment after the final modification agreement was executed.

65. Defendant breached its duty when it assessed late fees and inspection costs to her loan despite not being in default.

66. Defendant breached its duty when it improperly added force placed insurance to the loan.

67. Defendant breached its duty when it failed to properly notify Ms. Hawthorne in writing that an escrow account would be added to the loan.

68. Defendant breached its duty pursuant to the Real Estate Settlement Procedures Act (24 C.F.R. 3500.17) when it improperly re-analyzed Ms. Hawthorne's escrow account.

69. Defendant breached that duty when reported to the credit reporting agencies that she was delinquent after the final modification agreement was executed despite her making timely payments.

70. Defendant's breach was a proximate case of Ms. Hawthorne's injury.

71. Ms. Hawthorne was damaged when she was forced to pay incorrect monthly payment amounts, penalty fees and reported as late to the credit reporting agencies.

WHEREFORE, Ms. Hawthorne respectfully prays:

F. That this Court award compensatory damages in the amount of

$50,000.00;

G.  That this Court award punitive damages in the amount of $100,000.00;

H.  That this Court award damages in the amount of all overpayments made to Defendant Rushmore and penalty fees charged to Ms. Hawthorne;

I.  That this Court, in the alternative, award that any monies in appropriately assessed to Ms. Hawthorne's account be reversed and/or credited;

J.  That this Court award punitive damage to be established at trial;

K.  That this Court order that Defendant Rushmore submit a report to the applicable credit reporting agencies retrospectively correcting the erroneous late payments and other inaccuracies on her credit report related to the trade line for the mortgage loan at issue;

L.  For reasonable attorney's fees and costs; and

M.  For such other and further relief as the Court may deem just and appropriate.

**COUNT III**
**(NEGLIGENT MISREPRESENTATION)**

72. Mr. Hawthorne realleges, reaffirms and incorporates by reference the facts in paragraphs above as fully set forth herein.

73. Defendant Rushmore negligently communicated false information to Ms. Hawthorne when it continued to inform her that her loan was modified while simultaneously sending default correspondence, reporting the account as being in default, and referring the file to outside counsel.

74. Defendant Rushmore negligently communicated false information to Ms. Hawthorne when it continued to change her monthly payment amounts.

75. Defendant Rushmore negligently communicated false information to Ms. Hawthorne when it advised her to ignore the negative reporting and foreclosure notices.

76. Ms. Hawthorne relied on Defendant Rushmore's representations that her loan was modified and her payments were being applied to her detriment.

77. Defendant Rushmore knew or should have known that Ms. Hawthorne would be damaged by the false communications based on the fact that she continually expressed concern about how the loan and modification were being handled and then took action based on Defendant Rushmore's guidance.

78. Defendant Rushmore's conduct is the direct and proximate cause of Ms. Hawthorne's damage.

WHEREFORE, Ms. Hawthorne respectfully prays:

A. That this Court award compensatory damages in the amount of $50,000.00;

B. That this Court award punitive damages in the amount of $100,000.00;

C. That this Court award damages in the amount of all overpayments made to Defendant Rushmore and penalty fees charged to Ms. Hawthorne;

D. That this Court award that any monies in appropriately assessed to Ms. Hawthorne's account be reversed and/or credited;

E. That this Court order that Defendant Rushmore submit a report to the applicable credit reporting agencies retrospectively correcting the erroneous late payments and other inaccuracies on her credit report related to the trade line for the mortgage loan at issue;

F.  For reasonable attorney's fees and costs; and

G.  For such other and further relief as the Court may deem just and appropriate.

**COUNT IV**
**(VIOLATION OF DISTRICT OF COLUMBIA CONSUMER PROTECTION PRACTICES ACT – UNFAIR TRADE PRACTICES)**

79. Ms. Hawthorne realleges, reaffirms and incorporates by reference the facts in paragraphs above as fully set forth herein.

80. Pursuant to the District of Columbia Consumer Protection Procedures Act (D.C. Code § 28-3904), Defendant Rushmore was prohibited from engaging in unfair trade practices.

81. Specifically, Defendant Rushmore was prohibited from:

    a.  Making misrepresentations as to material fact which tends to mislead.

    b.  Failing to state a material fact if such failure would tend to deceive.

    c.  Failing to supply consumer with a copy of promissory note or other evidence of indebtedness.

        i.  Representing that the subject of the transaction has been supplied in accordance with a previous representation when it has not.

82. Defendant Rushmore engaged in unfair and deceptive trade practices when it failed to provide Ms. Hawthorne with the proper modified monthly payment amount.

83. Defendant Rushmore engaged in unfair and deceptive trade practices when it advised Ms. Hawthorne to ignore the inaccurate credit reporting and foreclosure notices.

84. Defendant Rushmore engaged in unfair and deceptive trade practices when it continued to directly inform her that her loan was modified despite the fact that it was actually reporting default and sending loss mitigation application solicitations.

85. Defendant Rushmore engaged in unfair and deceptive trade practices when it charged her account for late fees and inspection costs related to default despite her having made timely payments.

86. Defendant Rushmore engaged in unfair and deceptive trade practices when it continued to solicit her to apply for a loan modification despite being timely on her mortgage payments.

87. Ms. Hawthorne detrimentally relied on Defendant Rushmore's representations to her regarding the status of the finality of the modification and credit reporting.

WHEREFORE, Ms. Hawthorne respectfully prays:

A. That this Court award treble damages in the amount of 100,000.00;

B. That this Court award punitive damages in the amount of 100,000.00;

C. That this Court award damages in the amount of all overpayments made to Defendant Rushmore;

D. That this Court award that any monies in appropriately assessed to Ms. Hawthorne's account be reversed and/or credited;

E. That this Court order that Defendant Rushmore submit a report to the applicable credit reporting agencies retrospectively correcting the erroneous late payments and other inaccuracies on her credit report related to the trade line for the mortgage loan at issue;

16

F.  For reasonable attorney's fees and costs; and

G.  For such other and further relief as the Court may deem just and appropriate.

## COUNT V
## (VIOLATION OF FAIR CREDIT REPORTING ACT)

88.  Ms. Hawthorne realleges, reaffirms and incorporates by reference the facts in paragraphs above as fully set forth herein.

89.  Pursuant to the Fair Credit Reporting Act (15 U.S.C. §1681), Defendant Rushmore had a duty to report their tradeline to the respective credit reporting agencies fairly and accurately.

90.  Defendant Rushmore breached its duty when it started and continued to report that Ms. Hawthorne was in late and/or in default on her monthly mortgage payments after the final modification was approved.

91.  Defendant Rushmore breached its duty when it continued to report that Ms. Hawthorne was late and/or in default on her monthly mortgage statements after she disputed the reporting with Defendant Rushmore and with the respective credit reporting agencies.

92.  Defendant Rushmore's breach was the direct and proximate cause of Ms. Hawthorne's injury.

93.  Ms. Hawthorne was damaged by the breach when she was denied for a loan of $10,000.00 as well as car leases valued at approximately $300.00 per month.

WHEREFORE, Ms. Hawthorne respectfully prays:

A.  That this Court award her actual damages of $20,800.00;

B.  That this Court award her punitive damages of $100,000.00;

C.  That this Court order that Defendant Rushmore submit a report to the applicable credit reporting agencies retrospectively correcting the erroneous late payments and other inaccuracies on her credit report related to the trade line for the mortgage loan at issue;

D.  For reasonable attorney's fees and costs; and

E.  For such other and further relief as the Court may deem just and appropriate.

### COUNT VI
### (VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT)

94.  Ms. Hawthorne realleges, reaffirms and incorporates by reference the facts in paragraphs above as fully set forth herein.

95.  Pursuant to the Fair Debt Collections Practices Act (15 USC 1692(e)), Defendant Rushmore had a duty not to engage in representations with Ms. Hawthorne that were false, deceptive or misleading with regard to the servicing of her mortgage loan.

96.  Pursuant to the Fair Debt Collections Practices Act (15 USC 1692(e)), Defendant Rushmore had a duty not to false representations regarding the legal status of her loan.

97.  Pursuant to the Fair Debt Collections Practices Act (15 USC 1692(e)), Defendant Rushmore had a duty not to communicate or threaten to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

98. Defendant Rushmore breach its duty when it continued to provide false information to Ms. Hawthorne's regarding her monthly mortgage payment every month.

99. Defendant Rushmore breached its duty when it continued to provide misleading information to Ms. Hawthorne regarding her monthly mortgage payment every month.

100.     Defendant Rushmore breached its duty when it continued to inform her that her loan was not delinquent and that she was not in foreclosure status despite reporting its tradeline as late and/or in default to the respective credit reporting agencies.

101.     Defendant Rushmore's breach was the direct and proximate cause of Ms. Hawthorne's injury.

102.     Ms. Hawthorne was damaged by the breach when she was denied for a loan of $10,000.00 as well as car leases valued at approximately $300.00 per month.  She was damaged by the breach when her credit score was compromised.

WHEREFORE, Ms. Hawthorne respectfully prays:

F.   That this Court award her actual damages of $20,800.00;

G.   That this Court order that Defendant Rushmore submit a report to the applicable credit reporting agencies retrospectively correcting the erroneous late payments and other inaccuracies on her credit report related to the trade line for the mortgage loan at issue;

H.   For reasonable attorney's fees and costs; and

I.   For such other and further relief as the Court may deem just and

appropriate.

## COUNT VII
## (INFLICTION OF EMOTIONAL DISTRESS)

103.    Mr. Hawthorne realleges, reaffirms and incorporates by reference the facts

in paragraphs above as fully set forth herein.

104.    At all times relevant, Defendant was aware that Ms. Hawthorne was

experiencing extreme stress due to how Defendant was handling her modification.

105.    Ms. Hawthorne informed Defendant on multiple occasions that she felt

like she was having a heart attack and was extremely stressed.

106.    Ms. Hawthorne's stress-related exacerbations of her conditions are

verifiable by her physician.

107.    Defendant breached its duty of care owed to Ms. Hawthorne.

108.    Defendant's conduct is the proximate case of Ms. Hawthorne's injury.

109.    Ms. Hawthorne was injured when she was forced to start taking

medication to control her autoimmune flares that were caused by Defendant's

conduct.  She was forced to cease her efforts to conceive a child by in vitro

fertilization when she started taking the steroids. She has undergone several

medical procedures to remedy her exacerbated conditions.

WHEREFORE, Ms. Hawthorne respectfully prays:

A. That this Court award her damages in the amount of $250,000.00;

B. That this Court award punitive damages in the amount of $100,000.00;

C. For reasonable attorney's fees and costs; and

D. For such other and further relief as the Court may deem just and

appropriate.

## COUNT VIII
## (DEFAMATION)

110.     Mr. Hawthorne realleges, reaffirms and incorporates by reference the facts in paragraphs above as fully set forth herein.

111.     Defendant Rushmore made false and defamatory statements when it issued default correspondence, reported that a foreclosure previously occurred, reported that Ms. Hawthorne was late on her monthly payments after the loan was modified and reported an incorrect loan balance.

112.     Defendant Rushmore's statements were published to the credit reporting agencies.

113.     Defendant Rushmore's fault in publishing the statement was at least negligent based on the fact that her loan was modified and they continued to advise her that her loan was modified.

114.     Ms. Hawthorne was damaged by Defendant Rushmore's publication when her credit report inaccurately reflects missed payments, a foreclosure that didn't happen and an incorrect loan balance.

WHEREFORE, Ms. Hawthorne respectfully prays:

    E.   That this Court award damages in the amount of $100,000.00;

    F.   That this Court award punitive damages in the amount of 100,000.00;

    G.   That this Court order that Defendant Rushmore submit a report to the applicable credit reporting agencies retrospectively correcting the erroneous late payments and other inaccuracies on her credit report related to the trade line for the mortgage loan at issue;

    H.   For reasonable attorney's fees and costs; and

I.   For such other and further relief as the Court may deem just and
appropriate.

## JURY DEMAND

Plaintiff respectfully requests a jury trial.

Respectfully submitted,

_____/s/_____
Melanie Murray Mfume, Esq. #986367
Law Office of Melanie Murray Mfume, LLC
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 870-1019 ph
(888) 266-0046 fax
mmfume@lawofficeofmmm.com
*Attorney for Plaintiff*



P.O Box 55004
Irvine, CA 92618
888.504.6700 toll free
949.341.2300 fax
www.rushmorelm.com

December 21, 2017

Erica Natana Hawthorne
56 Ferguson St B4
Newark NJ 07105 0000

RE: Loan No. ███████7779
Property Address: 1629 R Street Southeast
                  Washington DC 20020

Dear Erica Natana Hawthorne :

We have enclosed important information regarding your loan.  Please
find a copy of the executed modification agreement by Rushmore Loan
Management Services for your records.

Should you have any questions, please contact our Customer Service
Department Toll Free at 1-888-504-6700 Monday through Thursday between
the hours of 6:00 a.m. to 7:00 p.m., Friday 6:00 a.m. to 6:00 p.m.
Pacific Standard Time.

Rushmore is pleased to have an opportunity to serve you.

Sincerely,

Rushmore Loan Management Services LLC

LM356 004 4X1



EXHIBIT 1

After Recording Return To:
Rushmore Loan Management Services LLC
15480 Laguna Canyon Road
Irvine, California 92618

This Document Prepared By:
CYNTHIA QUINTERO
Rushmore Loan Management Services LLC
15480 Laguna Canyon Road
Irvine, California 92618

_____ [Space Above This Line For Recording Data] _____

Original Loan Amount: $256,267.00                                    Loan No: ████7779

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 31st day of October, 2017, between ERICA NATANA HAWTHORNE SOLELY ("Borrower") and Owner, by and through Rushmore Loan Management Services LLC, as current servicer and agent, whose address is 15480 Laguna Canyon Road, Irvine, California 92618 ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated November 30, 2007 and recorded in Instrument No: 20080028007, of the Official Records of DISTRICT OF COLUMBIA County, DC and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**1629 R STREET SOUTHEAST, WASHINGTON, DC 20020,**
(Property Address)

the real property described being set forth as follows:

## AS SET FORTH IN THE DEED OF TRUST

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of October 31, 2017, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $299,060.28, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. $9,260.28 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $289,800.00. Interest will be charged on the Interest Bearing



LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument - District of Columbia
Mortgage Cadence Document Center   © 3831 08/14

Form 3179 1/01 (rev. 4/14)

(page 1 of 5)

Principal Balance at the yearly rate of 5.125%, from August 1, 2017. Borrower promises to make monthly payments of principal and interest of U.S. $1,421.48, beginning on the 1st day of September, 2017, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of 5.125% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be August 1, 2057.

3.  Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b)  all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6.  Borrower understands and agrees that:

    (a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument



shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [ ].

7.  Notwithstanding anything to the contrary contained in this Agreement, if a discharge has been granted, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.



LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument - District of Columbia
Mortgage Cadence Document Center  ⓒ  8831 06/14

Form 3179 1/01 (rev. 4/14)

(page 3 of 5)

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
ERICA NATANA HAWTHORNE  -Borrower

_____ [Space Below This Line For Acknowledgments] _____

District of Columbia

County of _____ Bronx _____

The foregoing instrument was acknowledged before me on

_____ November 30, 2012 _____

by _____ Junice   M.   Buchan _____

_____

_____

(Signature of person taking acknowledgment)

Notary   Public

(Title or rank)
My commission expires: _____ March 27, 2021 _____

*JUNIECE M. BUCHANAN*
Notary Public, State of New York
No. 01BU6356840
Qualified in Bronx County
Commission Expires March 27, 2021

Origination Company: Rushmore Loan Management Services LLC
NMLSR ID: MLO173649

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument - District of Columbia
Mortgage Cadence Document Center  ©  3533  56/14

Form 3179 1/01 (rev. 4/14)

(page 4 of 5)

Rushmore Loan Management Services LLC

By: _____ (Seal) - Lender
Name: _____ Kevin Klug
Title: _____ Vice President


_____
Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

State of _____

County of _____

The foregoing instrument was acknowledged before me on
_____

by _____ the _____ of

_____ ,

_____
(Signature of person taking acknowledgment)

_____
(Title or rank)

My commission expires: _____

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument—District of Columbia
Mortgage Cadence Document Center   © 8834 08/14

Form 3179 1/01 (rev. 4/14)
(page 5 of 6)

## ERRORS AND OMISSIONS/COMPLIANCE AGREEMENT

Loan Number: ███████7779

FHA/VA Case Number:

Borrower(s):   ERICA NATANA HAWTHORNE

Property Address:   1829 R STREET SOUTHEAST, WASHINGTON, DC 20020

Servicer:   Rushmore Loan Management Services LLC

The undersigned Borrower(s) for and in consideration of the above-referenced Servicer modifying the terms of your mortgage loan, agrees that if requested by your Servicer, to fully cooperate and adjust for clerical errors, any or all loan modification documentation deemed necessary or desirable in the reasonable discretion of Servicer to enable Servicer to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Department of Housing and Urban Development, or the Department of Veterans Affairs, or any Municipal Bonding Authority.

I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary.  If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note.  All documents the Lender requests of me under this Section shall be referred to as "Documents."  I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

The undersigned Borrower(s) agree(s) to comply with all above noted requests by the above-referenced Servicer within 15 days from date of mailing of said requests. Borrower(s) agree(s) to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to comply with correction requests in the above noted time period.

The undersigned Borrower(s) do hereby so agree and covenant in order to assure that this loan modification documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Servicer of its interest in and to said loan modification documentation, and to assure marketable title in the said Borrower(s).

DATED this 31st day of October, 2017.

_____ (Seal)
ERICA NATANA HAWTHORNE  -Borrower





Loan No:  7779

## BALLOON ADDENDUM TO LOAN MODIFICATION AGREEMENT

**ERICA NATANA HAWTHORNE**
**1629 R STREET SOUTHEAST**
**WASHINGTON, DC 20020**

THIS BALLOON ADDENDUM TO LOAN MODIFICATION AGREEMENT (the "Balloon Addendum") is made this 31st day of October, 2017, and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement (the "Modification Agreement" together, the "Agreements") entered into by the undersigned ("Borrower"), in favor of Owner, by and through **Rushmore Loan Management Services LLC**, as current servicer and agent for owner ("Lender"). The Agreements amend and supplement (1) the Mortgage, Deed of Trust or Security Deed and any applicable Riders (the "Security Agreement"), and (2) the Note bearing the same date as, and secured by, the Security Agreement.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Modification Agreement, Borrower and Lender further covenant and agree as follows:

1. In an effort to assist the borrower in meeting their monthly obligations and upon execution of the Agreements, Lender agrees to immediately forgive an amount equal to $0.00 (the "Forgiven Amount").

2. In addition, Lender will agree to defer payment in the amount of $9,260.28 (the "Balloon Amount"), which will be due and payable on the earliest of (a) the date the borrower sells or transfers an interest in the property, (b) the date the borrower pays the entire Interest Bearing Principal Balance, or (c) the maturity date of August 1, 2057. Lender will not charge interest on this Balloon Amount.

3. The payment of Principal and Interest listed in Paragraph 2 of the Modification Agreement is the payment necessary to amortize $289,800.00, which is the portion of the Unpaid Principal Balance not affected by the adjustments described in Paragraphs 1 and 2 of this Balloon Addendum.

The Agreements only modify the Security Agreement and Note in regard to the provisions addressed. All other terms and conditions of the Security Agreement and Note remain in full force and effect.

BY SIGNING BELOW, Lender and Borrower accept and agree to the terms and provisions contained in this Balloon Addendum.

_____ (Seal)
**ERICA NATANA HAWTHORNE** –Borrower


**Rushmore Loan Management Services LLC**

By_____ (Seal) - Lender
Name:   Kevin Kidd
Title:     Vice President

_____
Date of Lender's Signature

## Rushmore Loan Management Services

PO Box 52708
Irvine, CA 92619

Visit our website at www.rushmorelm.com
Telephone 888-504-6708

**MORTGAGE STATEMENT**
Statement Date: 10/11/2019

| | |
|---|---|
| Account Number | 7779 |
| Payment Due Date | 11/01/2019 |
| *Payments received after the statement date are not reflected.* | |
| **Amount Due**(5) | **$7,254.04** |
| If payment is received after 11/16/2019, a $56.86 late fee will be charged. | |

Erica Natana Hawthorne
60 Ferguson St Apt B4
Newark, NJ 07105-2881

Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. However, if you are in Bankruptcy or received a Bankruptcy Discharge of this debt, this letter is being sent for informational purposes only, is not an attempt to collect a debt and does not constitute a notice of personal liability with respect to the debt.

### Account Information

| | |
|---|---|
| Property Address | 1629 R STREET SOUTHEAST WASHINGTON DC, 20020 |
| Outstanding Principal(3) | $285,185.39 |
| Deferred Balance(2) | $9,280.28 |
| Interest Rate | 5.12500% |
| Recoverable Advances(4) | $1,149.30 |
| Prepayment Penalty | NO |

### Explanation of Amount Due(5)

| | |
|---|---|
| Principal | $205.33 |
| Interest | $1,216.15 |
| Escrow (for Taxes and Insurance) | $977.58 |
| **Regular Monthly Payment** | **$2,399.06** |
| Total Fees and Charges | $56.86 |
| Overdue Payments | $4,798.12 |
| **Total Amount Due** | **$7,254.04** |
| Partial Payment (Unapplied)(1) | $2,185.42 |

### Past Payments Breakdown

| | Paid Last Month | Paid Year-to-Date |
|---|---|---|
| Principal | $202.72 | $4,634.61 |
| Interest | $1,218.76 | $29,480.91 |
| Escrow (Taxes and Insurance) | $977.58 | $23,616.81 |
| Fees | $0.00 | $0.00 |
| Partial Payment (Unapplied)(1) | $100.94 | $-35,782.33 |
| Recoverable Advances(4) | $0.00 | $0.00 |
| Total | $2,500.00 | $57,732.33 |

### Important Messages

(1) **Partial Payment**: Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage. This amount is not accruing interest.

(2) **Deferred Balance**: The amount of your principal balance that is deferred as part of the terms of a loan modification. This amount is not accruing interest.

(3) **Outstanding Principal**: This is your Loan balance only, not the payoff amount, and does not include any Deferred Balance.

(4) **Recoverable Advances**: Disbursements for servicing-related expenses(non-escrow expenses) paid with servicer-funds rather than escrow funds which are recovered from you, the borrower.

(5) **Amount Due**: IF YOU ARE IN FORECLOSURE OR BANKRUPTCY, the amount listed here may not be the full amount necessary to bring your account current. To obtain the most up-to-date amount due information, please contact us at the number listed on this statement.

### If You Are Experiencing Financial Difficulty

If you would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287. Rushmore Loan Management Services is dedicated to providing outstanding loan servicing and customer support through a commitment to uphold ethical and honest business practices. Rushmore is customer-focused and we believe in providing the highest level of customer care. We treat all of our customers with respect, courtesy and integrity. We understand the importance of homeownership, and we recognize that at times economic changes can make it difficult to make your mortgage payment. We encourage our customers to contact us at 888-504-7300 to discuss assistance programs we may have available for you. We also encourage you to contact us to discuss any other issues you may be having with your mortgage. We believe that open and timely communication is a key to our relationship with you. We encourage all of our customers to continue to visit our website (www.rushmorelm.com) to access loan information, make payments, download forms, or obtain answers to questions about your account.



{Keep upper portion for your records}

Please mail so that your payment reaches us by the due date.

EXHIBIT 2



**Rushmore Loan Management Services**

PO Box 52708
Irvine, CA 92619

Visit our website at www.rushmorelm.com
Telephone 888-504-6700

**MORTGAGE STATEMENT**
Statement Date: 10/11/2019

Account Number: ████7779

## Transaction Activity (09/12/2019 to 10/11/2019)

| Date | Description | Principal | Interest | Escrow | Fees | Other | Total |
|------|-------------|-----------|----------|--------|------|-------|-------|
| 09/16 | LATE CHARGE ASSESS | | | | -56.86 | | |
| 09/20 | PAYMENT | 202.72 | 1,218.76 | 977.58 | | 100.94 | 2,500.00 |
| 09/25 | VALUE/HOA/INSP COST | | | | | 15.00 | 15.00 |
| 09/25 | VALUE/HOA/INSP COST | | | | | 1.50 | 1.50 |
| 09/27 | HAZARD INS REFUND | | | 390.93 | | | 390.93 |



P.O. Box 55004
Irvine, CA 92619
888.504.6700 toll free
949.341.2342 fax
www.rushmorelm.com

**Address Service Requested**

October 24, 2019

Erica Natana Hawthorne
56 Ferguson St B4
Newark, NJ 07105 0000
*

                              Loan No.: ████████7779
                    Property Address: 1629 R Street Southeast
                                      Washington DC 20020

Dear Erica Natana Hawthorne :

This letter is to inform you of our business decision to retract your
escrow analysis review completed on 10/17/19 regarding the above
referenced loan.

Due to unforeseen circumstances, we made the business decision to
retract your escrow analysis and return your loan back to its
original state prior to the analysis; the retraction was completed on
10/24/19. Your loan will be re-analyzed on a date later to be determined
and we will send you advanced notification prior to the new payment
effective date.

The provisions below further clarify information recently provided
regarding anticipated escrow disbursements pertaining to the above
referenced loan, including the surplus amount referenced within the
Annual Account Disclosure Statement.

       24 CFR 3500.17 provides in pertinent part:

           (f)    Shortages, surpluses, and deficiencies requirements-(2)
                  Surpluses.

           (i)   If an escrow account analysis discloses a surplus,
                 the servicer shall, within 30 days from the date of the
                 analysis, refund the surplus to the borrower if
                 the surplus is greater than or equal to 50 dollars
                 ($50). If the surplus is less than 50 dollars ($50),
                 the servicer may refund such amount to the borrower,
                 or credit such amount against the next year's
                 escrow payments.



EQUAL HOUSING
LENDER

# EXHIBIT 3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| NOV 19 | $977.58 | $977.58 | | | | $6801.73 | $16243.28 |
| DEC 19 | $977.58 | $977.58 | | | | $5865.48 | $16243.28 |
| JAN 20 | $977.58 | | * | | | $6843.06 | * |
| FEB 20 | $977.58 | | * | $5379.00 | | $7820.64 | * |
| MAR 20 | $977.58 | | * | | TOWN/BORO | $3419.22 | * |

Last year, we anticipated that payments from the escrow account would be made during this period totaling   $11,731.00. The lowest monthly balance should not have exceeded $1,955.18, the lowest amount required by the mortgage contract, state or federal law.

OVER THIS PERIOD, AN ADDITIONAL    $.00 WAS DEPOSITED INTO THE ESCROW ACCOUNT FOR INTEREST ON ESCROW.

The actual lowest monthly balance was greater than  $1,955.18. The items with an asterisk on the account history may explain this, if you would like a further explanation, please call our toll-free number:  1-888-504-6700.

Rushmore Loan Management Services
P.O. Box 55004
Irvine, CA 92619

ANTICIPATED ESCROW ACCOUNT DISBURSEMENTS

TAXES                                    $8,293.43

ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT
AND CHANGE OF PAYMENT NOTICE PREPARED FOR:

Loan Number:    ████7779
Analysis Date:  10/17/2019

ERICA NATANA HAWTHORNE
60 FERGUSON ST APT B4
NEWARK NJ 07105-2881

**NEW MONTHLY PAYMENT IS AS FOLLOWS:**

| | |
|---|---|
| Principal and Interest | $1,421.48 |
| Required Escrow Payment | $524.45 |
| Shortage/Surplus Spread | $.00 |
| Optional Program Payment | $.00 |
| Buydown or Assistance Payments | $.00 |
| Other | $.00 |
| **TOTAL MONTHLY PAYMENT** | **$1,945.93** |
| **NEW PAYMENT EFFECTIVE DATE:** | **01/01/2020** |

**FOR BORROWERS IN BANKRUPTCY OR BORROWERS WHOSE DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS IS AN INFORMATIONAL STATEMENT AND IT IS NOT AN ATTEMPT TO COLLECT A DEBT. PLEASE NOTE THAT EVEN IF YOUR DEBT HAS BEEN DISCHARGED IN BANKRUPTCY AND YOU ARE NO LONGER PERSONALLY LIABLE ON THE DEBT, THE LENDER MAY, IN ACCORDANCE WITH APPLICABLE LAW, PURSUE ITS RIGHTS TO FORECLOSE ON THE PROPERTY SECURING THE DEBT.**

Rushmore Loan Management Services has completed an analysis of the escrow account. We have adjusted the mortgage payment to reflect changes in the real estate taxes and/or property insurance. The escrow items to be disbursed from the account are itemized above. If you have questions regarding this analysis, please write to our Customer Service Department at Rushmore Loan Management Services, P.O. Box 55004, Irvine, CA 92619, or call toll-free 1-888-504-6700.

In the event you utilize a third party to remit your payments, please inform them of the effective date of any change in your payment.

**ANNUAL ESCROW ACCOUNT PROJECTION FOR THE COMING YEAR**

This is an estimate of activity in the escrow account during the coming year based on payments anticipated to be made from the account.

| | PAYMENTS TO ESCROW ACCOUNT | PAYMENTS FROM ESCROW ACCOUNT | | | | ESCROW ACCOUNT BALANCE | |
|---|---|---|---|---|---|---|---|
| MONTH | | MIP/PMI | TAXES | FLOOD | HAZ. INS | SPECIAL | PROJECTED | REQUIRED |
| STARTING BALANCE | | | | | | | $15243.28 | $4854.55 |
| JAN 20 | $524.45 | | | | | | $15767.73 | $5378.00 |
| FEB 20 | $524.45 | | | | | | $16282.18 | $5902.45 |
| MAR 20 | $524.45 | | | | | $5379.00 | $11437.63 | $1048.90 * |
| APR 20 | $524.45 | | | | | | $11962.08 | $1573.35 |
| MAY 20 | $524.45 | | | | | | $12486.53 | $2097.80 |
| JUN 20 | $524.45 | | | | | | $13010.98 | $2622.25 |
| JUL 20 | $524.45 | | | | | | $13535.43 | $3146.70 |
| AUG 20 | $524.45 | | | | | $914.43 | $13145.45 | $2756.72 |
| SEP 20 | $524.45 | | | | | | $13669.90 | $3281.17 |
| OCT 20 | $524.45 | | | | | | $14194.35 | $3805.62 |
| NOV 20 | $524.45 | | | | | | $14718.80 | $4330.07 |
| DEC 20 | $524.45 | | | | | | $15243.25 | $4854.52 |

*indicates a projected low point of $11,437.63 . Under the mortgage contract, state or federal law, the lowest monthly balance should not exceed $1,048.90. The difference between the projected low point and the amount required is $10,388.73 . This is the surplus.

Please keep this statement for comparison with the actual activity in your account at the end of the next escrow accounting computation year.

IF THIS ESCROW ANALYSIS INDICATES THAT THERE IS A SURPLUS, IT MAY NOT MEAN THAT YOU ARE ENTITLED TO RECEIVE A RETURN OF THAT SURPLUS. THIS ANALYSIS WAS CALCULATED BASED ON AN ASSUMPTION THAT THE ACCOUNT IS CURRENT ACCORDING TO THE TERMS OF THE NOTE AND MORTGAGE/DEED OF TRUST. IF THE ACCOUNT IS BEHIND, IN DEFAULT, OR IN BANKRUPTCY, THIS ANALYSIS MAY NOT REFLECT THE CURRENT STATE OF THE ACCOUNT OR THE TERMS OF A BANKRUPTCY PLAN. IF THERE ARE ENOUGH FUNDS IN THE ESCROW ACCOUNT AND THE SURPLUS IS $50 OR GREATER, THAT SURPLUS WILL BE MAILED TO YOU WITHIN 30 DAYS, PROVIDED THE ACCOUNT IS CURRENT UNDER THE TERMS OF THE NOTE AND MORTGAGE/DEED OF TRUST.



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Erica N. Hawthorne
_____
                                    Plaintiff

                        vs.                                          Case Number _____

Rushmore Loan Management Services, LLC c/o Corporation Service Co.
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Melanie Murray Mfume, Esq.
_____          _Clerk of the Court_
Name of Plaintiff's Attorney

1629 K Street NW, Ste. 300
_____          By _____
Address                                                                           Deputy Clerk
Washington, DC 20006
_____
(202) 870-1019                                                    Date _____
Telephone
如需翻译，请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오           កែ្រសំរាប់ ជាក់ អ៊ីកក្បុក (202) 879-4828 ឬ ៩ត្រ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                              Super. Ct. Civ. R. 4



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

Erica N. Hawthorne
_____
                    Demandante

    contra

                                        Número de Caso: _____
Rushmore Loan Management Services, LLC c/o Corporation Service Co.
_____
                    Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Melanie Murray Mfume, Esq.                          *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

1629 K Street NW, Ste.                              Por: _____
_____
Dirección                                               Subsecretario
Washington, DC 20006
_____

(202)-870-1019                                     Fecha: _____
_____
Teléfono
如需翻译，请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
전화하시면 됩니다 (202)879-4828 无料翻译，请   ኔተዎ ኔተዎ አማፕጉ (202) 879-4828   ያላላኮ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                              Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Erica N. Hawthorne

Case Number: _____

vs

Date: _____

Rushmore Loan Management Services, LLC

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*<br>Melanie Murray Mfume, Esq. | Relationship to Lawsuit |
| Firm Name:<br>Law Office of Melanie Murray Mfume, LLC | ☒ Attorney for Plaintiff |
| Telephone No.:                Six digit Unified Bar No.:<br>(202) 870-1019        986367 | ☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury      ☐ 6 Person Jury      ☒ 12 Person Jury

Demand: $ 890,000                                                    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____   Judge: _____   Calendar #: _____

Case No.: _____   Judge: _____   Calendar#: _____

---

NATURE OF SUIT:      *(Check One Box Only)*

**A. CONTRACTS**                                    COLLECTION CASES

☒ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
   Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
   Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
   Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
   Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
   Under $25,000 Consent Denied

---

**B. PROPERTY TORTS**

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

---

**C. PERSONAL TORTS**

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
   Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
   Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

## C. OTHERS

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
  (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [ ] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability

- [ ] 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

## II.

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
  Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151.9 (a)]
- [ ] 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- [ ] 21 Petition for Subpoena
  [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

## D. REAL PROPERTY

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

---

/s/ Melanie Murray Mfume                     01/09/2020

Attorney's Signature                              Date

CV-496/ June 2015